[No. C008902. Third Dist. July 24, 1991.]

DION TURNER, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

886

**COUNSEL**

James B. Chanin and Julie M. Houk for Plaintiff and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Darryl L. Doke and Margret A. Rodda, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**PUGLIA, P. J.**—In this personal injury action stemming from a shooting incident at Cal Expo, plaintiff Dion Turner appeals a judgment of dismissal entered after the trial court granted summary judgment to all defendants. Plaintiff contends summary judgment was improper because defendants failed to negate all claims stated in the complaint and the court erred in precluding a claim for inadequate lighting because of noncompliance with the Government Tort Claims Act (Gov. Code, § 810 et seq.). We shall affirm.

I

Sometime between 10:30 and 11 p.m. on September 5, 1987, plaintiff was shot in the elbow in parking lot A of Cal Expo in Sacramento. Plaintiff had just attended the California State Fair and was walking with a friend to the friend's vehicle when plaintiff heard yelling and screaming from behind and looked around to see people "running and scattering." Plaintiff and his companion began running toward parking lot A. When he reached the parking lot plaintiff began walking toward the vehicle. He then heard and felt the shot, which also came from behind. Plaintiff did not see his assailant.

Cal Expo is owned and operated by the State of California (the State). The general manager is defendant Joseph Barkett (Barkett). Defendant Frank Uhercik (Uhercik) was a security officer hired by the State to work at Cal Expo. Uhercik came on duty the night of the shooting at around midnight. Prior to this shooting there had been a number of assaultive incidents in Cal Expo parking lots. There had also been warnings of possible gang related activity that evening.

After first serving a claim on the State, which was rejected, plaintiff filed this action. The complaint contains four causes of action: negligent maintenance and operation of Cal Expo, dangerous condition of property, negligent hiring and training of Uhercik and other officers, and negligent infliction of emotional distress. Among other things the complaint alleges the State and Barkett were aware of gang related violence but failed to take appropriate steps to protect or warn the public. It also alleges Uhercik was responsible for firing the shot which hit plaintiff.

Defendants moved for summary judgment or in the alternative summary adjudication of issues, supported by evidence that neither Uhercik nor any other officer fired the shot which hit plaintiff. Defendants argued they are not liable on a negligence or dangerous condition of property theory based

solely upon a failure to provide adequate security. Plaintiff responded with evidence of prior assaultive conduct on the premises and inadequate lighting in parking lot A. The trial court granted summary judgment concluding defendants are immune from liability for failure to provide adequate police protection (Gov. Code, § 845) and a claim of inadequate lighting is barred by failure to include it in the claim served on the State Board of Control. After entry of a judgment of dismissal, plaintiff appealed.[1]

## II

We address first the trial court's disregard of evidence the lighting in parking lot A was inadequate. The trial court concluded this evidence was immaterial because no such allegation had been included in the claim served on the State Board of Control.

With certain exceptions, public entities and public employees are liable for their torts to the same extent as private parties. (Gov. Code, §§ 820, subd. (a), 815.2, subd. (a); further statutory references to sections of an undesignated code are to the Government Code.) However, before a complaint may be filed against a governmental entity such entity must be presented with a claim in the form required by section 910. (§ 945.4.) This claim must include "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." (§ 910, subd. (d).)

"The primary function of the [Government Tort Claims Act (§ 810 et seq.)] is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims." (*Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74 [135 Cal.Rptr. 621].) It is therefore necessary for the claim served on the governmental entity to describe fairly what that entity is alleged to have done. "If a plaintiff relies on more than one theory of recovery against the State, each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." (*Nelson* v. *State of California* (1982) 139 Cal.App.3d 72, 79 [188 Cal.Rptr. 479].)

The factual circumstances described in the claim here alleged failure to warn of or take adequate precautions against anticipated gang-related

---

[1]Apparently conceding the evidence establishes neither Uhercik nor any other security officer fired the shot which hit him, plaintiff does not appeal that portion of the judgment dismissing claims against Uhercik.

violence and reckless conduct of security officers in firing the shot which hit plaintiff. This description also alleged violation of plaintiff's Fourth and Fourteenth Amendments rights, violation of California Civil Code section 51 et seq., inflictions of emotional distress, "dangerous conditions of property," negligence, and assault and battery.[2] Nowhere is there any mention of inadequate lighting as a basis for the dangerous condition of property or the negligent conduct of the State or Barkett.

In *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744 [84 Cal.Rptr. 257] plaintiff's boat docks were damaged when the Sacramento River rose past its anticipated level. Plaintiff served a claim on the State based on the dissemination of inaccurate river forecasts but later filed a complaint based on negligent release of water from a state-operated dam. The Court of Appeal concluded the claim did not support the complaint.

In *Donohue* v. *State of California* (1986) 178 Cal.App.3d 795 [224 Cal.Rptr. 57] the claim served on the State alleged negligence in permitting an uninsured motorist to take a driving test. The Court of Appeal concluded this claim did not support cause of action for negligence "in failing to

[2]The full description of the claim reads as follows:

"Claimant is informed and believes and thereon alleges that California State Fair police and/or State Fair General Manager Joe Barkett, and other State of California employees, agents and/or servants knew and/or should have known that criminal activity, including but not limited to gang-related violence and shootings, had occurred in the past and would continue to occur in the future in the Cal Expo facilities. Despite notice of such activities, the State of California, its agents, employees and/or servants failed to provide adequate *warnings and/or security* to members of the general public attending events at the Cal Expo facilities, *thereby* exposing such persons to foreseeable and unreasonable risks of harm and/or rendering the Cal Expo facilities in an unreasonably dangerous condition. As a direct and proximate result of said acts and/or omissions, Claimant suffered injuries as described below.

"Claimant is further informed and believes and thereon alleges that the injuries and damages sustained by Claimant were the direct and proximate result of negligent, reckless and/or intentional acts and/or omissions of State Fair police officers, California State Police, probation officers, State law enforcement officers and security guards and/or other law enforcement officers acting in concert with them, some and/or all of whom may have been responsible for the firing of gunshots which struck the Claimant. Claimant's representatives have attempted to obtain information from the Sacramento County District Attorney's Office investigating this matter to determine the exact persons responsible for the gunshots fired on the night of the incident without success. Therefore, in making this claim, Claimant relies upon a Sacramento Bee newspaper article of September 7, 1987, attached and incorporated herein, which states that at least two shots were fired by State Fair police officers at the scene of the incident.

"Claimant is further informed and believes and thereon alleges that the the [*sic*] injuries and damages to the Claimant may have been caused by any and/or all of the following acts and/or omissions of State of California employees, agents and/or servants: violations of the Claimant's rights under the Fourth and Fourteenth Amendments to the United States Constitution; violations of California Civil Code (Unruh Act) Code Section 51, et seq.; intentional and/or negligent inflictions of emotional distress; dangerous conditions of property; negligence; assault and battery." (Italics added.)

instruct, direct or control the motorist in his driving examination." (At p. 804.)

In *Fall River Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431 [253 Cal.Rptr. 587] the claim served on government officials alleged the plaintiff's injuries were caused by the defective condition of a door which caused it to close with "excessive force" and slam plaintiff's head against the door frame. (At p. 434.) We concluded this claim did not support a cause of action for negligent supervision of horseplaying schoolchildren. (At p. 436.)

Plaintiff contends the general charge in his claim of "dangerous conditions of property" is broad enough to include an allegation of inadequate lighting and is therefore substantial compliance with the tort claim requirement. (See *Elias* v. *San Bernardino County Flood Control Dist., supra,* 68 Cal.App.3d at p. 74.) Plaintiff relies on *Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266 [262 Cal.Rptr. 754] and *Blair* v. *Superior Court* (1990) 218 Cal.App.3d 221 [267 Cal.Rptr. 13]. In *Smith* the court held a claim of negligent construction of a roadway which caused a landslide and destroyed the plaintiffs' homes supported a cause of action alleging the landslide was also caused by the clearance of slide debris from and the runoff of water over the new roadway. The Court of Appeal indicated: "Necessary maintenance of the roadway, such as the clearing of slide debris, and conditions resulting from the presence of the road, such as the channelling of water runoff, are matters closely connected with the construction of the road." (214 Cal.App.3d at p. 280.)

In *Blair* we held a claim alleging an automobile accident had been caused by " '[n]egligent maintenance and construction of highway surface' " and " '[f]ailure to sand and care for highway for safetyness of automobile transportation' " (218 Cal.App.3d at p. 223) was sufficient to support allegations regarding ice on the road, lack of guard rails, improper slope of the road and inadequate warnings. We concluded the general claims regarding road maintenance and construction were sufficient to support the specific allegations of the complaint. (*Blair* v. *Superior Court, supra,* 218 Cal.App.3d at p. 226.)

The instant case is distinguishable. In both *Smith* and *Blair* the allegations in the claim were broad enough to encompass those in the complaint. The allegations of the complaint merely clarified the allegations of the claim. Here, the allegations plaintiff seeks to introduce are completely different from those contained in the claim. Read in its entirety, the dangerous condition alleged in the claim is known criminal activity, not inadequate

lighting. The new allegations constitute a complete shift in theory from what the defendants are alleged to have done to cause plaintiff's injuries.

As we noted in *Fall River*, any contention of substantial compliance "is unavailing where the plaintiff seeks to impose upon the defendant public entity the obligation to defend a lawsuit based upon a set of facts entirely different from those first noticed. Such an obvious subversion of the purposes of the claims act, which is intended to give the governmental agency an opportunity to investigate and evaluate its potential liability, is unsupportable." (*Fall River Joint Unified School Dist. v. Superior Court, supra,* 206 Cal.App.3d at pp. 435-436, citing *Donahue v. State of California, supra,* 178 Cal.App.3d at p. 804.) The claim here alleged one factual scenario, i.e., the presence of criminal activity; plaintiff is attempting to introduce another, i.e., inadequate lighting. The trial court was therefore correct in refusing to consider inadequate lighting evidence to defeat summary judgment.[3]

### III

Plaintiff contends the defendants failed to negate all causes of action stated in the complaint. "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. (*Stationers Corp. v. Dun & Bradstreet* [1965] 62 Cal.2d [412,] 417 [42 Cal.Rptr. 449, 398 P.2d 785].) To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial. (*Ibid.*)" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

The pleadings delimit the issues to be considered on a motion for summary judgment. (*Sadlier v. Superior Court, supra,* 184 Cal.App.3d 1050, 1055.) The defendant must present facts to negate each claim as framed by the complaint or establish a defense. Only when this prima facie showing is made must the plaintiff demonstrate the existence of a triable, material issue. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

The second count of the complaint alleges a dangerous condition of property as follows: "By permitting ongoing criminal activity and/or

---

[3]Plaintiff contends any defect in the claim served on the State Board of Control is not a proper basis to disregard inadequate lighting evidence because defendants did not raise this in their initial memorandum in support of summary judgment. However, this merely underscores the lack of any lighting contention in both the claim and the complaint. Defendants had no reason to challenge such contention when they had no notice plaintiff was relying on it. The complaint circumscribes the claims and theories the defendants must meet on a motion for summary judgment. (*Sadlier v. Superior Court* (1986) 184 Cal.App.3d at 1050, 1055 [229 Cal.Rptr. 374].)

gang-related violence to occur at or about the Cal Expo premises and California State Fair, said premises were rendered to be in a dangerous condition which foreseeably and proximately caused the injuries as alleged herein." Section 835 imposes liability on a public entity for a "dangerous condition of its property" which creates "a reasonably foreseeable risk of the kind of injury which was incurred." " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

"Ordinarily, whether a given set of facts or circumstances creates a dangerous condition of public property within the meaning of the statute poses a question of fact. When, however, reasonable minds can come to only one conclusion on those facts, the question becomes one of law. [Citation.]" (*Crow* v. *State of California* (1990) 222 Cal.App.3d 192, 206 [271 Cal.Rptr. 349].)

■ Liability for a dangerous condition of property cannot be premised upon third party conduct alone. (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810 [205 Cal.Rptr. 842, 685 P.2d 1193] (*Peterson*); *Crow* v. *State of California, supra,* at p. 205; *Stone* v. *State of California* (1980) 106 Cal.App.3d 924 [165 Cal.Rptr. 339].) Such liability may arise only where third party conduct is coupled with a defective condition of the property. (*Peterson, supra,* at p. 810; *Hayes* v. *State of California* (1974) 11 Cal.3d 469, 472 [113 Cal.Rptr. 599, 521 P.2d 855].) For example, in *Peterson*, the plaintiff was injured when an unidentified assailant jumped from behind unreasonably thick and untrimmed foliage adjoining the stairway the plaintiff had been ascending. The court concluded such injury created a claim for failure to warn and failure to trim the foliage. (36 Cal.3d at pp. 812-813.)

■ The only dangerous condition alleged in the complaint here was the existence of "ongoing criminal activity and/or gang-related violence." This is not a condition of the property itself and cannot alone support a claim under section 835. And because as previously noted the trial court properly disregarded evidence of inadequate lighting, there is nothing else to support this claim.

IV

■ The remaining counts of the complaint are based on theories of negligence. The first count alleges with knowledge of criminal or gang-related violence defendants "failed to take appropriate action to protect

members of the public," "failed to warn members of the public," and "failed to take appropriate steps to keep the subject premises in a reasonably safe condition and to maintain it free from known hazards to the public." It further alleges officers, including Uhercik, negligently "fired guns" or "caused shots to be fired" in the Cal Expo parking lot. The third count alleges defendants failed adequately to "select, train, supervise, and discipline" Uhercik and other security officers thereby proximately causing them to "fire weapon(s) at the subject premises." The final count alleges negligent infliction of emotional distress in connection with the same conduct alleged in the other counts.

■ An essential element of any negligence claim is a legal duty of care. Duty is a question of law to be determined by the court on a case-by-case basis. ■ "As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.' [Citations.]" (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894].)

Despite this general rule against liability "[i]t has long been recognized that 'a possessor of land who holds it open to the public for entry for business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.' [Citations.] Liability will normally be imposed in circumstances where the possessor has reasonable cause to anticipate the misconduct of third persons. [Citations.]" (*Peterson, supra,* 36 Cal.3d at p. 807.)

Citing section 815 and *Peterson, supra,* defendants contend this general duty of possessors does not apply to public entities. Section 815 precludes liability of public entities except as provided by statute. In *Peterson* the plaintiff alleged a defective condition of university property contributed to the attack by a third party. The court analyzed this claim under section 835 because that section "is the principal provision addressing the circumstances under which the government may be held liable for maintaining a dangerous condition of public property." (*Peterson,* 36 Cal.3d at p. 809.)

■ But here the claim is not based on a dangerous condition of property. Instead plaintiff claims inadequate security and a failure to warn of

known dangers. Such claims are governed by section 820, subdivision (a), imposing liability on a public employee for acts or omissions "to the same extent as a private person," and section 815.2, subdivision (a), imposing liability on a public entity for acts or omissions of its employees. We must therefore look to general tort principles.

In a given case, the imposition of a duty is " 'an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection.' " (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Whether a duty will be imposed depends upon a number of factors, including the foreseeability of the injury suffered, the degree of certainty plaintiff was injured, the connection between the defendant's conduct and the injury, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the burden on the defendant and community in imposing a duty, and the availability of insurance. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124 [211 Cal.Rptr. 356, 695 P.2d 653]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

Plaintiff presented sufficient evidence to at least create a question of fact on foreseeability of the harm suffered. However, in analyzing the policy considerations bearing on the question of duty it is important to keep in sight what defendants are alleged to have done or not done to cause plaintiff's injuries. Despite plaintiff's contrary contentions on appeal, the allegations of the claim and the complaint are twofold: inadequate police security and failure to warn of known hazards. Defendants presented no evidence to refute either point. However, as the trial court correctly concluded, defendants are immune from liability for failure to provide adequate police protection. (*Stone* v. *State of California, supra,* 106 Cal.App.3d at p. 929.) Section 845 reads: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

A lack of warnings also cannot support a claim under the circumstances of this case. In *Hayes* v. *State of California, supra,* 11 Cal.3d 469, the court refused to permit an amendment to the complaint to allege a failure to warn of known hazards. The plaintiff had been attacked while on a public beach at night and filed a complaint alleging inadequate police protection. Regarding the inadequate warning contentions, the court indicated: "While we acknowledge that the warning called for by plaintiffs might be beneficial in some instances, both public awareness of the prevalence of crime and policy factors militate against imposing a governmental duty to warn in circum-

stances such as these. [¶] First, it is indisputable that the public is aware of the incidence of violent crime, particularly in unlit and little used places. Thus, it would serve little purpose for government to further remind the public of this unfortunate circumstance in society. [¶] Next, to the extent warning of past criminal conduct might serve a beneficial purpose, it—unlike cautioning against a specific hazard in the *use* of property—admonishes against any use of the property whatever, thus effectively closing the area. But determining and regulating the use of public property are better left to legislative and administrative bodies, rather than to the judiciary. [¶] Finally, the disquieting spectre of warning signs hanging in areas where crime has occurred—not unlike the leper's bell—manifests the unreasonableness of the duty sought to be imposed by plaintiffs on their government." (At pp. 472-473, fns. omitted; see also *Taeleifi* v. *Southern Cal. Rapid Transit Dist.* (1982) 130 Cal.App.3d 366, 370 [181 Cal.Rptr. 697] (no duty to warn of criminal activity on a public bus).)

As in *Hayes*, the only thing to be gained by requiring warnings of possible criminal activity at Cal Expo would be to keep people away from the area. This is a matter better left to the Legislature. There being no other basis for imposing a duty upon the defendants under the circumstances of this case, plaintiff's negligence claims collapse.[4] Summary judgment was therefore appropriate.

The judgment is affirmed.

Sims, J., and Scotland, J., concurred.

---

[4]Plaintiff contends defendants failed to address the negligence of Barkett or the claim for negligent infliction of emotional distress. However, our conclusion no duty exists eliminates all negligence claims against both the State and Barkett, including the claim for negligent infliction of emotional distress.