[No. B076556. Second Dist., Div. Six. Dec. 15, 1993.]

LOMPOC UNIFIED SCHOOL DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
MICHAEL D. ELLISON, SR., et al., Real Parties in Interest.

**COUNSEL**

Radovich, Cumberland & Coates and Greg A. Coates for Petitioner.

No appearance for Respondent.

Perry & Spann and Kelly Watson for Real Parties in Interest.

## OPINION

**YEGAN, J.**—We hold that a public entity which allows a sporting event to take place on its property has no legal duty to provide a distraction barrier to prevent a passing motorist from seeing or hearing the event. In this situation, the public entity has no liability for injuries caused by the inattentive motorist.

### Pleadings and Evidence

On October 11, 1991, Michael D. Ellison, real party in interest, was riding his bicycle on Pine Street, a public road adjacent to the Lompoc Unified School District's (District) property. A football game was in progress. Ellison was struck and severely injured by a motor vehicle operated by Jill Dickinson.

Ellison filed a complaint against the District, Dickinson, and the City of Lompoc. As to the District, he alleged that it maintained a dangerous condition of public property and that Dickinson ". . . was distracted by the events occurring on and around the athletic field and the gathering of people in the 400 block of Pine Avenue to watch the athletic events occurring thereon. . . ." He claimed that District created and maintained a dangerous condition on its property by cutting back a hedge which had previously served as a distraction barrier. Ellison theorized that the visibility of the school's athletic field from the street attracted spectators and created a carnival-like atmosphere, thereby causing a dangerous condition for bystanders, pedestrians, bicyclists and motorists.

Dickinson struck Ellison because she was momentarily distracted by either the football game or by some people standing on the District's property watching the game. The collision did not occur upon property owned or controlled by District. The football field is approximately 140 feet from the sidewalk that is adjacent to Pine Street.

### Motion for Summary Judgment

District filed a motion for summary judgment claiming: (1) it owed no duty of care to Ellison; (2) Ellison's injuries were not proximately caused by the condition of the athletic field; and (3) no dangerous condition existed on District's property.

Respondent court denied summary judgment. It determined that there was a triable issue of fact as to whether: (1) the condition of the football field

attracted the attention of motorists; and (2) the District could foresee that harm would result by allowing the public to have an unimpaired view of the football field. Respondent court did not rule on District's contention that, given the undisputed facts, it owed no duty to Ellison.

### Writ Relief

District sought a writ of mandate from this court. Appellate courts are reluctant to use the device of an extraordinary writ as a means to review denials of summary judgment. (*Roman Catholic Archbishop* v. *Superior Court* (1971) 15 Cal.App.3d 405, 410 [93 Cal.Rptr. 338].) However, because the issue tendered by District is one of first impression, we granted an alternative writ of mandate. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 169 [84 Cal.Rptr. 718, 465 P.2d 854]; *Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1273 [258 Cal.Rptr. 66].)

### Duty

■ "[A] legal duty so called is nothing but a prediction that if a man does or omits certain things he will be made to suffer in this or that way by judgment of the court . . . ." (Holmes, *The Path of the Law* (1897) 10 Harv.L.Rev. 457, 458.) The boundaries of duty may be redefined by the courts in response to ever-changing social norms and mores. (E.g., see *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) "Changing social conditions lead constantly to the recognition of new duties." (Prosser & Keeton, Torts (5th ed. 1984) § 53 p. 359.)

■ The California Supreme Court has "observed that the question of a duty ' ". . . is a shorthand statement of a conclusion, rather than an aid to analysis in itself . . . [b]ut it should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." ' [Citations.] In considering whether one owes another a duty of care, several factors must be weighed including among others: ' "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" [Citation.] When public agencies are involved, additional elements include "the extent of [the agency's] powers, the role imposed upon it by law and the

limitations imposed upon it by budget . . . ." [Citations.]' [Citations.]" (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 805-806 [205 Cal.Rptr. 842, 685 P.2d 1193].)

■ The occupier of real property owes a duty to exercise ordinary care in the use and management of his or her land. (Civ. Code, § 1714, subd. (a); *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561].) The occupier must maintain such land in a manner as to not injure the users of an abutting street or sidewalk. (*Scott* v. *Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 517 [6 Cal.Rptr.2d 810]; *Swanberg* v. *O'Mectin* (1984) 157 Cal.App.3d 325, 330 [203 Cal.Rptr. 701].)

There are limits to the duties owed by the occupier of real property. "Normally, the duties do not extend to persons outside the land, e.g., on adjacent land or on the highway. [Citations.]" (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 898, p. 268.) Thus, the occupier of real property ". . . cannot be held liable for the defective or dangerous condition of property which it . . . [does] not own, possess or control." (*Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379, 386 [243 Cal.Rptr. 627]; see also *Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799 [87 Cal.Rptr. 50].)

In *Owens* v. *Kings Supermarket, supra*, 198 Cal.App.3d 379, plaintiff double-parked his car on the street in front of Kings Supermarket in order to purchase a newspaper from the store. Plaintiff was struck by a passing motorist as he exited his vehicle. He filed suit alleging that the supermarket had adopted the street for its commercial use and thereby created a hazardous condition. The trial court sustained a demurrer to the complaint and dismissed the action.

The Court of Appeal affirmed, holding that plaintiff's allegation that he was injured on a public street precluded any finding of duty. (*Owens* v. *Kings Supermarket, supra*, 198 Cal.App.3d 379, 385.) The court rejected plaintiff's contention that the market had a duty to exercise reasonable care to prevent injuries to persons occurring upon adjacent property or public streets. (*Id.*, at p. 386.) "The courts . . . have consistently refused to recognize a duty to persons injured in adjacent streets or parking lots over which the defendant does not have the right of possession, management and control." (*Ibid.*, citing *Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142 [214 Cal.Rptr. 405]; see also *Martinez* v. *Pacific Bell* (1990) 225 Cal.App.3d 1557, 1561 [275 Cal.Rptr. 878].)

In *Nevarez* v. *Thriftimart, Inc, supra*, 7 Cal. App.3d 799, 805, a young child was struck by an automobile on an adjacent public street while

returning home from the grand opening of a store. The Court of Appeal held that the store had no liability because it had no power to control public streets. Such control lies with the proper governmental authorities and not with the occupier of adjacent land. (See also *Seaber* v. *Hotel Del Coronado* (1991) 1 Cal.App.4th 481 [2 Cal.Rptr.2d 405] [hotel owed no duty to person struck while crossing a public street after leaving the hotel].)

Ellison, relying upon *Satariano* v. *Sleight* (1942) 54 Cal.App.2d 278 [129 P.2d 35], argues that District owed him a duty even through the accident did not occur upon the school grounds. In *Satariano*, plaintiff, a student on his way to class, was struck by an automobile as he dashed across a public road which went through his high school campus. The court held that school districts owe a special duty of care for the safety of their students, especially when students are required to cross a public road to go between classes. (*Id.*, at p. 284.) We agree with this rule and have recently held that "[a] special relationship exists between a school district and its students who are on campus for a school-related function." (*Constantinescu* v. *Conejo Valley Unified School Dist* (1993) 16 Cal.App.4th 1466, 1472 [20 Cal.Rptr.2d 734].) However, Ellison was not a student at the time of the collision and *Satariano* is not here controlling.

Next, Ellison makes the imaginative argument that District owed him a duty not to hold activities that would distract passing motorists.

No California case has specifically considered whether an occupier owes such a duty. However, cases from other jurisdictions have spoken to this issue. These cases hold that an occupier has no legal duty to provide a distraction barrier to prevent passing motorists from seeing or hearing what is occurring upon the land. In this instance, the occupier has no liability for injuries caused by the motorist who is not paying attention to where he or she is going. Rather, it is the motorist who has the duty to exercise reasonable care at all times, to be alert to potential dangers, and to not permit his or her attention to be so distracted by an interesting sight that such would interfere with the safe operation of a motor vehicle. (E.g., see *Cavaliere* v. *Adults for Kids* (1986) 149 Mich.App. 756 [386 N.W.2d 667]; *Blakeley* v. *Johnson* (1965) 220 Ga. 572 [140 S.E.2d 857]; *Steehler* v. *Fashion City of Michigan, Inc.* (1968) 14 Mich.App. 76 [165 N.W.2d 306]; *Defini* v. *Broadview Hts.* (1991) 76 Ohio App.3d 209 [601 N.E.2d 199]; *McCray* v. *Myers* (Fla.Dist.Ct.App. 1993) 614 So.2d 587.) We adopt these holdings as the rule in California.

In *Cavaliere* v. *Adults for Kids, supra*, 386 N.W.2d 667, a highway worker brought a personal injury action against a corporation that leased a park

adjacent to a road for the purpose of exhibiting military hardware. The complaint alleged that the sight of a helicopter landing in the park distracted a motorist who, in turn, collided with plaintiff. The Michigan Court of Appeal affirmed the trial court's dismissal and said: "It is the duty of a driver to exercise reasonable care at all times, be alert to potential dangers, and not allow his or her attention to be distracted by an interesting sight along the road. [Citation.]" (*Id.*, at p. 669.)

In *Blakeley* v. *Johnson, supra*, 140 S.E.2d 857, plaintiff alleged that the employee of a service station had negligently whistled, shouted, and made loud noises which distracted a motorist who "rear-ended" a vehicle operated by plaintiff. The service station owner's demurrer was sustained and the case was dismissed. The Georgia Supreme Court affirmed the dismissal. It reasoned that the service station owner could not have reasonably foreseen that the advertising activities of its employees would cause a motorist to disregard his own safety or that any motorist would violate traffic laws. The court concluded that a "[m]yriad [of] distracting objects and sounds surround motorists on the busy streets of Atlanta. Responsible drivers, who have due regard for the safety of themselves and others, will not allow themselves to be diverted by these sights and sounds to the extent that they disregard the fundamental rules of safe driving." (*Blakeley* v. *Johnson, supra*, 140 S.E.2d 857, 860.)

In *Steehler* v. *Fashion City of Michigan, Inc., supra*, 14 Mich.App. 76 [165 N.W.2d. 306], a pedestrian was injured in a fall, ostensibly distracted by an interesting window display. The Michigan Court of Appeal held that the pedestrian could not use the distraction to relieve herself of the duty to watch out for her own safety while walking on a public sidewalk.

In *Defini* v. *Broadview Hts., supra*, 601 N.E.2d 199, the Ohio Court of Appeal indicated that a city owed no duty to two pedestrians killed when a motorist, distracted by Christmas light displays, struck them on a public road.

In *McCray* v. *Myers, supra*, 614 So.2d 587, the Florida Court of Appeal held that the owners of real property, upon which was erected a Marlboro billboard designed to temporarily catch the attention of passing motorists, owed no legal duty to remove the sign. Thus a motorcyclist, struck by a motorist distracted by the sign, stated no cause of action against the owner of the real property.

### Dangerous Condition of Public Entity Property

A public entity is not liable for injuries except as provided by statute. (Gov. Code, § 815 et seq.; *Brown* v. *Poway Unified School Dist.* (1993) 4

Cal.4th 820, 829 [15 Cal.Rptr.2d 679, 843 P.2d 624]; Cal. Government Tort Liability Practice (Cont.Ed.Bar 1992) § 2.8, pp. 76-77.)[1] The provisions of the Tort Claims Act ". . . are to be read against the background of general tort law. 'The conceptual theory of statutory liability under the act is keyed to the common law of negligence and damages. . . .' [Citations.]" (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d 799, 809.)

 Ellison has labeled his cause of action against District as being for "Negligence," but the averments, if liberally construed (Code Civ. Proc., § 452), are that District is liable on a Government Code section 835 theory.[2]

Ellison contends that District's property was maintained in a dangerous condition because District had trimmed a hedge which previously blocked the passing public's view of the football field.[3] District's action, he alleges, created a reasonably foreseeable risk that motorists traveling on the adjacent street would be distracted by athletic events and become involved in traffic accidents. Citing *Jordan* v. *City of Long Beach* (1971) 17 Cal.App.3d 878 [95 Cal.Rptr. 246], he argues that the very existence of an unscreened football field, located near a public street, constituted a dangerous condition and that this condition proximately caused his injuries. That case, however, is factually distinguishable. There, defective pavement and a protruding water pipe

---

[1]Government Code section 815 provides, in part, that, "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

[2]Government Code section 835 reads as follows: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which occurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." The Government Code defines "dangerous condition" as, "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

[3]In support of his claim, Ellison now offers evidence, in the form of photographs, depicting certain other high school football fields located in Santa Barbara County which he claims are not in a dangerous condition. Ellison also has submitted the deposition of an expert who opined that the unscreened stadium situated near a public road constituted a dangerous condition.

This evidence was not offered in opposition to the motion for summary judgment and, as such, we cannot consider it in deciding this case. "It is elementary that an appellate court is confined in its review to the proceedings which took place in the trial court. [Citation.] Accordingly, when a matter [evidence] was not tendered in the trial court, '[i]t is improper to set [it] forth in briefs or oral argument, and [it] is outside the scope of review.' [Citation.]" (*Bach* v. *County of Butte* (1989) 215 Cal.App.3d 294, 306 [263 Cal.Rptr. 565].)

were adjacent to public property. Here there was no physical defect on public property or adjacent to it.

### District Owed No Duty to Ellison

■ As mentioned, a public entity has a duty to protect the public against dangerous conditions that exist upon public property. (See *Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 811; *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 716-717 [159 Cal.Rptr. 835, 602 P.2d 755].) However, every injury that arises out of the use of public lands does not engender an actionable claim. (*Turner* v. *State of California* (1991) 232 Cal.App.3d 883, 892 [284 Cal.Rptr. 349].) "The question whether one owes a duty to another must be decided on a case-by-case basis . . . ." (*Bastian* v. *County of San Luis Obispo* (1988) 199 Cal.App.3d 520, 530 [245 Cal.Rptr. 78].)

Whether a dangerous condition exists is usually a question of fact, but " 'may only be resolved as a question of law if reasonable minds can come to but one conclusion.' " (*Peterson* v. *Community College Dist., supra,* 36 Cal.3d 799, 810.) ■ "The issue of duty to the plaintiff [fn. omitted] is very definitely one of law, and can be nothing else. It is in no part of the province of a jury to decide whether the defendant stands in such a relation to the plaintiff that the law will impose upon him an obligation of reasonable conduct for the plaintiff's benefit . . . . Whenever such issues are left to the jury in the great grab-bag of proximate cause, the court is again abdicating decision in favor of men who do not know the law." (Prosser, *Proximate Cause in California* (1950) 38 Cal.L.Rev. 369, 423.)

■ Whether occupiers of land owe a duty to not distract passing motorists is a question of law. (*Scott* v. *Chevron U.S.A., supra,* 5 Cal.App.4th at pp. 514-515; see also *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747].)

We hold that, as a matter of law, District owed no duty to the users of an adjacent street to shroud the athletic field so that its activities could not be seen or heard by passing motorists. (*Peterson* v. *San Franciso Community College Dist, supra,* 36 Cal.3d at pp. 805-806.) When a motorist exercises due care while passing that property, the fact that an event that may be in progress poses no risk of harm (let alone a substantial risk) to pedestrians, bicyclists, or motorists on the adjacent public road. (*Fredette* v. *City of Long Beach* (1986) 187 Cal.App.3d 122, 131 [231 Cal.Rptr. 598]; *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926, 939-940 [125 Cal.Rptr. 586].) "It is the duty of a motorist to anticipate that he [or she] might meet pedestrians or

vehicles at any point in the street and to keep his [or her] automobile under such control as will enable him [or her] to avoid a collision with persons using ordinary care and precaution. [Citations.]" (*Burton* v. *Los Angeles Ry. Corp.* (1947) 79 Cal.App.2d 605, 609-610 [180 P.2d 367]; see also Veh. Code, § 22350.)[4]

As indicated in *Murrell* v. *State of California* ex rel. *Dept. Pub. Wks* (1975) 47 Cal.App.3d 264, 267 [120 Cal.Rptr. 812]: "Government Code section 830, subdivision (a), defines a *dangerous condition* of public property as one creating a substantial risk or injury, when it is *used with due care* in a reasonably foreseeable manner. [footnote omitted.] The qualification that the property is dangerous only when *used with due care* does not require the plaintiff to prove due care on the part of the third party (here, the bus driver) involved in the plaintiff's injury. Rather, the statute means that the condition is dangerous if it creates a substantial risk of harm when used with due care by the public generally, as distinguished from the particular person charged as concurrent tortfeasor." Were we to reach a contrary determination, every occupier of an athletic field, which could attract the attention of a passing motorist, would potentially be subject to civil liability. The occupier of such property has no duty to erect a distraction barrier, whether it be a hedge, an opaque fence, or a dome.

Ellison's attempt to extend the frontiers of duty beyond the borders of land ". . . is foreign to the concept upon which all premises liability is based, i.e., that possession includes the attendant right to manage and control, thereby justifying the imposition of a duty to exercise due care in the management of the property. [Citation.]" (*Owens* v. *Kings Supermarket*, *supra*, 198 Cal.App.3d 379, 386.)

## Conclusion

The most avid sports fan has a duty to exercise reasonable care when driving adjacent to a stadium in which a sporting event is taking place. Motorists are routinely exposed to a melange of off-road distractions which may include sporting events, low-flying aircraft, billboards, Christmas displays, rock concerts, brush fires, or unusually or scantily attired pedestrians. Travelers who, in the manner of Homer's ancient Argonauts, must sail past Sirens, are obliged to exercise reasonable care in the navigation of their craft and resist being seduced by sights and sounds.

---

[4]Thus, the fact that real party may have an expert who will opine that the proximity of the athletic field to the street without a distraction barrier was "an accident waiting to happen" does not alter our conclusion. This expert has not taken into consideration the legal duties imposed upon the passing motorist.

Let a peremptory writ of mandate issue directing respondent superior court to set aside and vacate its order denying District's motion for summary judgment, and enter a new order granting the motion. The stay order and alternative writ are discharged.

Stone (S. J.), P. J., and Gilbert, J., concurred.