SIXTH DIVISION

March 19, 1999

No. 1-97-4442

RITA LARGOSA and DENNIS LARGOSA, ) Appeal from the

) Circuit Court of

Plaintiffs-Appellees, ) Cook County.

)

v. )

)

FORD MOTOR COMPANY and ARIZONA BUNGEE, ) The Honorable

INC., d/b/a Bungee Over Chicago, ) 
Robert P. Bastone
,

Defendants-Appellants. ) Judge Presiding.

JUSTICE BUCKLEY delivered the opinion of the court: 

Plaintiffs, Rita and Dennis Largosa, brought this action against defendant, Arizona Bungee, Inc., d/b/a Bungee over Chicago (Arizona Bungee), for damages sustained as a result of the alleged negligence of defendant in operating its business in close proximity to a busy highway.  On August 15, 1997, the trial court entered summary judgment in favor of defendant, on the grounds that defendant owed no duty of care to plaintiffs.

Following the trial court's decision to nonsuit codefendant, Ford Motor Company (Ford), on November 4, 1997, plaintiffs filed this timely appeal and maintain the circuit court was incorrect in finding defendant owed no duty of care to plaintiffs.

The relevant facts are as follows:  Plaintiffs were injured on May 29, 1992, when Rita Largosa lost control of her car and collided with the median divider wall on northbound Interstate 294.  Her husband, Dennis Largosa, was a passenger in the car at the time of the accident.

On July 30, 1993, plaintiffs filed a complaint naming Ford, the Village of Bridgeview and Arizona Bungee as defendants.  Arizona Bungee filed a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure on September 9, 1993.  735 ILCS 5/2-615 (West 1992).  The lower court denied the motion to dismiss on November 15, 1993, and ruled that a duty did exist because the foreseeability of injury was great and the burden of moving the bungee-jumping business was small.  Plaintiffs then filed their first-amended complaint against Ford and Arizona Bungee on December 3, 1993.
(footnote: 1)  Counts IV, V and VI of the first-

amended complaint alleged that while driving northbound on Interstate 294 plaintiffs were "cut off by an unknown vehicle whose driver was gaping at bungee-jumpers adjacent to and over Interstate Highway 294 forcing the Plaintiff to turn suddenly to avoid a collision with the unknown vehicle."  This complaint further alleged that Arizona Bungee's "careless and negligent acts" in operating a bungee-jumping business in close proximity to a busy highway without any warning to the public were a proximate cause of plaintiffs' injuries.

Defendant's bungee-jumping business allowed customers, outfitted with a harness and elastic cord, to jump from the top of a crane to a swimming pool below.  As the person dropped toward the ground, the cord would extend and allow the person to approach, but not come in contact with, the swimming pool water.  As pled in plaintiffs' first-amended complaint, defendant's business was duly authorized and licensed to operate at this location.  However, the complaint did not allege that the land adjacent to the southbound lanes of Interstate 294 was owned by defendant.
(footnote: 2)
At a deposition on November 15, 1995, Rita Largosa testified that as she drove northbound on Interstate 294 she noticed the bungee jumping to her left across the highway.  She stated that as the northbound traffic slowed to watch the bungee jumping, the driver and passenger of a black Honda to her left were looking up at the bungee jumping.  According to Mrs. Largosa, the black Honda then crossed into her lane, causing her to lose control of her own car and crash into the median wall.    

Defendant filed a motion for summary judgment on February 27, 1997, which the trial court granted on August 15, 1997.

Plaintiffs maintain that the circuit court erred in granting defendant's motion for summary judgment.  Specifically, plaintiffs argue that since the proximity of defendant's business to a busy highway increased the likelihood of serious injury to Interstate 294 motorists, and defendant's burden of placing its business in a less conspicuous location was small, defendant owed plaintiffs a duty of care.

It is well settled that summary judgment should be granted only when the pleadings, depositions, affidavits, and admissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1105(c) (West 1996); 
Zekman v. Direct American Marketers, Inc., 
182 Ill. 2d 359, 374 (1998).  On a motion for summary judgment, the court must consider all the evidence before it strictly against the movant for summary judgment and liberally in favor of the nonmovant.  
Zekman, 
182 Ill. 2d at 374.  When reviewing a trial court's order granting a motion for summary judgment, the standard of review is 
de novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co., 
154 Ill. 2d 90, 102 (1992).

In order to prevail on a negligence claim, a plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach.  
Ward v. K- mart Corp., 
136 Ill. 2d 132, 140 (1990).  When deciding whether to impose a duty, Illinois courts consider (1) the foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden upon the defendant.  
Ward v. K-mart Corp., 
136 Ill. 2d at 140-41.  In a negligence action, the determination of whether a duty exists is an issue of law and depends upon whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff.  
Ziemba v. Mierzwa, 
142 Ill. 2d 42, 47 (1991). 

Although the specific fact scenario in the case at bar presents a case of first impression, Illinois courts have previously addressed the analogous question of the duty owed by a property owner to people using an adjacent highway.  
Whittaker v. Honegger, 
284 Ill. App. 3d 739, 741-42 (1996); 
Ziemba v. Mierzwa, 
142 Ill. 2d 42, 45 (1991); 
Abdo v. Trek Transportation Co., 
221 Ill. App. 3d 493, 496 (1991).  In those cases, the courts have focused on the reasonable foreseeability of the injury before deciding whether to impose a duty on the property owner.  See 
Ziemba, 
142 Ill. 2d at 49; 
Abdo, 
221 Ill. App. 3d at 496.  Accordingly, our analysis begins by examining the reasonable foreseeability of a highway motorist losing control of her car when another car crosses into her lane of traffic because this second car may have been distracted by an uncommon sight along the highway.  See 
Ward, 
136 Ill. 2d at 151-52 (proper inquiry is whether the alleged condition was inherently dangerous under the specific facts of the case, not in the abstract).

Section 368 of the Restatement (Second) of Torts is instructive on the duty of a landowner to travelers on adjacent highways:

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are travelling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel." Restatement (Second) of Torts §368, at 268 (1965).

Numerous cases have applied this principle to accidents caused by accumulations of snow, ice and gravel moving from adjacent property to a well-traveled highway.  For example, in 
Whittaker, 
the court found that an accumulation of loose gravel from defendant/land-owner's driveway on an adjacent highway, which caused the plaintiff to lose control of his motorcycle, created a duty on the part of the defendant to prevent or remedy any conditions arising by virtue of the driveway.  
Whittaker, 
284 Ill. App. 3d at 743.  However, the court made clear that its decision relied on defendant having allowed a condition to develop "that was literally on the highway surface" and posed "a danger to passing motorists, regardless of any third-party conduct."  
Whittaker, 
284 Ill. App. 3d at 743-44.  Moreover, the court found that their finding of a duty on the part of the defendant did not "put an elevated burden on defendants to guard against the negligence of others."  
Whittaker, 
284 Ill. App. 3d at 744.

Ziemba, 
on the other hand, addressed the issue of whether a defendant/landowner had a duty to maintain his property so that his driveway was visible to travelers on an adjacent roadway.  
Ziemba, 
142 Ill. 2d at 45.  The supreme court declined to find that a duty existed "[b]ecause the condition on defendant's land posed no danger to plaintiff absent the independent, negligent act" of the third-party driver.  
Ziemba, 
142 Ill. 2d at 52.  The court reasoned that the condition on defendant's land posed no danger to plaintiff, absent the driver violating his own standard of care, and imposition of a duty here would require the defendant to "'guard against the negligence of others.'"  
Ziemba, 
142 Ill. 2d at 52, quoting 
Dunn v. Baltimore & Ohio R.R. Co., 
127 Ill. 2d 350, 366 (1989).

Both 
Whittaker 
and 
Ziemba 
are helpful in this case.  The courts clearly hesitate to impose a duty on a landowner who operates a business in close proximity to a well-traveled highway, unless the defendant allows a physical condition to exist on the highway surface.  Here, we find that defendant's business did not pose a foreseeable danger directly to plaintiffs on the highway.  None of the bungee jumpers launched themselves out onto the highway or even over it.  Therefore, we will not impose a duty that would unnecessarily expose defendant to extensive liability for unforeseen negligence.   

Plaintiffs argue that the truly unique nature of bungee jumping and the obvious distraction of seeing a person fly through the air requires the imposition of a duty.  Yet, even if we accept plaintiffs' argument that the sight of bungee jumping is a startling distraction, which can lead to numerous foreseeable traffic injuries, we still must balance this factor with the burden and consequences of placing a duty on defendant to prevent such injuries.  
Ziemba, 
142 Ill. 2d at 52.  

In the instant case, plaintiffs never set foot on defendant's property and never contemplated visiting defendant's bungee-jumping facility.  Plaintiffs were merely among the many motorists who passed defendant's business everyday on Interstate 294.  Defendant had no idea which motorists might look up and actually become startled at the sight of a person jumping from the crane.  By contrast, in 
Whittaker, 
the landowner was in the best position to prevent injuries by removing small amounts of accumulated gravel from the adjacent highway.  Here, it is unclear what measures defendant, as a licensed and authorized business, could have reasonably taken to avoid distracting motorists.  A warning sign at the side of the highway would have been a small burden to defendant but may have served to only increase the number of "gaping" motorists.  A wall or curtain blocking the bungee jumping from view would have been a considerable undertaking, considering the jumping platform was approximately 180 feet in the air.  And, at this height, virtually any location would be in clear view of a road and motorists.  Therefore, it is reasonable to conclude that the motorists on Interstate 294 were in the best position to avoid accidents by operating their vehicles with care.
(footnote: 3)      Defendant's motion for summary judgment relied on the California Court of Appeals' decision in 
Lompoc Unified School District v. The Superior Court, 
20 Cal. App. 4th 1688, 26 Cal. Rptr. 2d at 122 (1993).  Plaintiffs argue that 
Lompoc 
is distinguishable and inapposite to the instant case because the defendant was a municipality with governmental immunity and the cause of action was brought pursuant to a California statute, not the common law.  We find this argument unpersuasive.   In 
Lompoc, 
plaintiff/bicyclist was injured by a motorist when the motorist was momentarily distracted by a football game located on defendant's property adjacent to a public road.  
Lompoc, 
20 Cal. App. 4th at 1691, 26 Cal. Rptr. 2d at 124.  In reaching its decision that, as a matter of law, defendant owed no duty to the users of an adjacent road to "shroud the athletic field," the court analyzed the issue of duty using common-law principles.  
Lompoc, 
20 Cal. App. 4th at 1692-95.  Ultimately, the court held that the defendant had no duty and reasoned that the landowner had no liability for injuries caused by motorists who did not pay attention to where they were going.  
Lompoc, 
20 Cal. App. 4th at 1694, 26 Cal. Rptr. 2d at 125.

Plaintiffs further argue that this court should hesitate to reach out "across the Mississippi River, to pluck a case from California State jurisprudence" and "graft that state's body of tort law upon this issue to this Illinois case."  However, Illinois courts often rely on decisions in other jurisdictions when confronted, as here, with a case of first impression.  See, 
e.g.
, 
Jaime v. Director, Department of Employment Security, 
___ Ill. App. 3d ___, ___, 704 N.E.2d 721, 725 (1998).

In conclusion, the many roads of ingress and egress to and from the City of Chicago provide numerous distractions for motorists.  Planes approaching and departing both O'Hare and Midway airports barely fly above motorists as part of a prearranged flight plan.  During the baseball season, motorists on the Dan Ryan Expressway may suddenly hear and see bright and loud fireworks when a member of the Chicago White Sox hits a home run (however rare this occurrence may be).  Lake Shore Drive also offers numerous distractions to drivers.  People in the parks and on paths just off the road fly colorful kites, play golf, roller skate, sun bathe and participate in endless other potentially distracting activities.  Furthermore, all streets and highways present a constant barrage of colorful and creative advertisements to passing cars that could possibly shock and/or distract a passing motorist.  There is an endless number of potential distractions lining our roads, some expected and some unexpected.

Plaintiffs ask this court to conduct a fact-specific, case-by-case analysis, which would impose a duty on business owners who create distractions near busy highways.  In theory, this is a seemingly reasonable request.  However, in practice, this is a dangerous proposition.  The acts that potentially create a distraction to passing motorists exist on a continuum.  It is unclear how we can delineate what is a potentially distracting activity without exposing business owners to excessive liability.  Perhaps the sight of the Sears Tower is a distraction to a carload of tourists from a neighboring state, yet Chicago area residents expect to see this massive building during their daily commute to work.  In the absence of a clear and efficient rule for imposing a duty on business owners to not distract passing motorists, we hold that businesses that operate a licensed and authorized business near a street, road or highway do not have a duty to passing motorists who might become distracted by the activities of the business.   

The 
Lompoc 
court's concluding words offer perspective into this case:

"Motorists are routinely exposed to a melange of off-road distractions which may include sporting events, low-flying aircraft, billboards, Christmas displays, rock concerts, brush fires, or unusually or scantily attired pedestrians.  Travelers who, in the manner of Homer's ancient Argonauts, must sail past Sirens, are obliged to exercise reasonable care in the navigation of their craft and resist being seduced by sights and sounds."  
Lompoc, 
20 Cal. App. 4th at 1698.

For the aforementioned reasons, the judgment of the circuit court, granting summary judgment in favor of defendant, is affirmed.

Affirmed.

CAMPBELL, P.J., and ZWICK, J., concur.

FOOTNOTES
1:  
Village of Bridgeview was dismissed by the circuit court on October 5, 1993.

2:  Defendant's brief, on the other hand, states that the bungee-jumping business was "located on defendant's property."  

3:  The circuit court disagreed with this position when it denied Arizona Bungee's motion to dismiss.  The court stated that the burden of having defendant move its crane to a less visible location was comparatively small.