Filed 2/5/25  Courtois v. Nationstar Mortgage CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KRISTI J. COURTOIS,<br><br>        Plaintiff, Cross-defendant and Appellant,<br><br>        v.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>        Defendant, Cross-complainant and Respondent. | D083821<br><br><br><br>(Super. Ct. No. 37-2017-00010745-CU-OR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Law Offices of Ronald H. Freshman and Ronald H. Freshman for Plaintiff, Cross-defendant and Appellant.

Troutman Pepper Hamilton Sanders, Justin D. Balser, Andrea M. Hicks, and Brenna J. McGill for Defendant, Cross-complainant and Respondent.

In April 2006, Kristi J. Courtois obtained a purchase money loan from Countrywide Home Loans, Inc. (Countrywide) to buy a condominium.

In 2009, Courtois contacted her loan servicer to modify her loan and stopped making loan payments in December of that year. Therefore, she has lived in her home for over the past 15 years without making a single home loan payment.

Although Courtois engaged in discussions with her loan servicer over several years, she did not successfully negotiate a loan modification. Eventually, servicing of her loan was transferred to Nationstar Mortgage, LLC (Nationstar) in July 2013.

Courtois attempted to negotiate a loan modification with Nationstar. To aid in the process, she hired counsel. However, within a month of becoming the servicer of Courtois's loan, Nationstar received documents indicating that Courtois had executed a deed of trust with an assignment of rents in favor of a third party, who had filed for bankruptcy. Apparently, these documents caused some confusion as Nationstar began communicating with the third party and his counsel about a loan modification. Courtois denied that she executed the subject deed of trust transferring any interest in her home to a third party.

Courtois eventually submitted a loan modification application to Nationstar. However, Nationstar communicated about the status of Courtois's loan modification with the third party and his bankruptcy counsel. Near that same time, Nationstar also communicated with Courtois's attorney regarding the status of the loan modification.

After Courtois's efforts to obtain a loan modification with Nationstar proved unfruitful over the course of several years, Nationstar recorded a notice of default on December 15, 2016 to begin the nonjudicial foreclosure process. Nearly four months later, Courtois filed suit, naming Nationstar as well as four other defendants that were either involved with the origination

of Courtois's loan, had an interest in that loan, or provided some service to an entity with an interest in the loan. The focus of the original complaint was to stop any nonjudicial foreclosure sale from proceeding while challenging the validity and ownership of Courtois's loan and the various recorded documents related to that loan.

On December 13, 2018, Nationstar recorded a notice of rescission of the previously recorded notice of default. In addition, after some procedural maneuvering by the various parties, Courtois filed a first amended complaint on February 20, 2019. In that complaint, in addition to claims alleged against other defendants, Courtois alleged six causes of action against Nationstar.

On December 4, 2020, the court granted Nationstar's motion for judgment on the pleadings as to five of the six causes of action but granted Courtois leave to amend two of those causes of action. Despite being given multiple opportunities to file an amended complaint, Courtois did not do so. Thus, the operative complaint remained the first amended complaint and the only existing cause of action against Nationwide was a claim for negligence.

After our high court issued its opinion in *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905 (*Sheen*), Nationstar filed a renewed motion for summary judgment as to the only remaining cause of action (negligence), arguing that *Sheen* precluded that claim. The court granted Nationstar's motion, concluding that Courtois could not maintain a negligence cause of action against Nationwide under *Sheen*.

Courtois appeals the ensuing judgment, arguing: (1) the trial court erred in granting Nationstar's motion for judgment on the pleadings and abused its discretion by not granting her leave to amend all the causes of action that were dismissed; and (2) the trial court erred in granting

3

Nationwide's motion for summary judgment on the remaining negligence claim because *Sheen* did not bar that claim. We are not persuaded by Courtois's arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2006, Courtois obtained a loan in the amount of $215,200 (Loan) from Countrywide for the purchase of residential property located in Carlsbad, California (Property). The Loan is secured by a deed of trust recorded against the Property. Bank of America, N.A. (BANA) is alleged to be the successor in interest to Countrywide.

In 2009, Courtois reached out to BANA about restructuring the Loan. BANA allegedly informed Courtois that it "could not work with [her] until the [L]oan was in default." Courtois stopped making the required payments on the Loan as of December 2009.

Courtois subsequently reached out to BAC Home Loan Servicing, LLC, which was servicing the loan at that time for BANA, to apply for a loan modification.[1] Although the process was not efficient, Courtois submitted the required information.

On December 30, 2012, Courtois received a letter from BANA dated December 28, 2012, indicating that Courtois had been approved for a conditional Trial Period Plan (TPP). Under the TPP, Courtois was required

---

[1] "The entity holding the servicing rights to a mortgage loan is known as a servicer. A servicer is 'responsible for account maintenance activities such as sending monthly statements to mortgagors, collecting payments from mortgagors, keeping track of account balances, handling escrow accounts, calculating interest-rate adjustments on adjustable-rate mortgages, reporting to national credit bureaus, and remitting funds collected from mortgagors to the [owners of the beneficial interest in the loans].' [Citation.] 'Servicers also are responsible for handling defaulted loans, including prosecuting foreclosures and attempting to mitigate investors' losses.' [Citation.]" (*Sheen, supra,* 12 Cal.5th at p. 918, fn. 2.)

to make three monthly payments of $1,423.39 beginning on February 1, 2013 and ending on April 1, 2013. The December 28 letter informed Courtois that if she made all the required payments under the TPP and continued to meet all the eligibility requirements of the "modification program," the Loan would "be permanently modified." Because Courtois was uncertain of the terms of the potential loan modification, she did not make any of the TPP payments.

Courtois again applied with BANA for a loan modification, but while her application was pending, she received notification that servicing of the Loan had been transferred to Nationstar. Nationstar had become the servicer of the Loan as of July 31, 2013. Courtois and Nationstar disagree regarding their interactions after Nationstar became the servicer.

Courtois claims that, beginning in July 2013, she began asking Nationstar about the status of the loan modification application she submitted to BANA. Nationstar informed Courtois that it had no loan modification application on file. Thus, Courtois hired legal counsel to guide her through the modification process. Courtois stated that she received a blank loan application from BANA on August 15, 2013 and forwarded it to her attorney with supporting documentation.

According to Nationstar, on August 23, 2013, it received a facsimile to its bankruptcy department that identified the Property and corresponding trustee's sale number. The notice informed Nationstar of a Chapter 7 bankruptcy petition that was filed in U.S. Bankruptcy Court, Southern District of California, case No. 13-08261-LA7. The debtor's attorney was listed as Michael A. Feldman. The notice included a copy of a deed of trust with an assignment of rents, purportedly executed by Courtois, which listed Fred D. Brown as the beneficiary under the subject deed of trust. Courtois represented that she did not sign any deed of trust involving Brown and she

5

never met the notary who allegedly notarized her signature on that deed of trust.

Around August 27, 2013, in response to the bankruptcy notice, Nationstar sent a welcome letter to Feldman. Among other information, that letter informed Feldman that his client needed to complete an attached authorization if he was retaining the Property and interested in loss mitigation opportunities.

According to Nationstar, on September 5, 2013, Courtois called Nationstar to explain that she had received a loan modification packet from Feldman and would have her attorney submit the modification paperwork. Courtois denied that any such conversation with Nationstar occurred. Moreover, Courtois represented that she does not know Feldman, never authorized Nationstar to speak to Feldman about the Loan, did not receive any correspondence from Feldman, and has never talked to Feldman.

On September 12, 2013, Nationstar received Courtois's modification paperwork. Additionally, Courtois stated that her attorney, Charles Marshall, informed her in September that her loan modification application had been submitted to Nationstar.

On October 3, 2013, Nationstar mailed a missing documents letter to Feldman regarding Courtois's loan modification application. The letter indicated that Courtois needed to provide Nationstar with the following documents: "Homeowners association documentation showing amount and frequency of payment[;] Most recent quarterly or Year to Date Profit & Loss statement showing gross income, expenses, and net income[;] Proof of occupancy[.]"

Over five months later, on March 10, 2014, Nationstar talked with Courtois's attorney regarding the status of the loan modification application.

6

Nationstar told counsel about the missing documents while advising him that the Loan was not currently in foreclosure. Courtois's attorney agreed to provide the missing information.

Four days later, Courtois submitted some of the missing information to Nationstar; however, the application remained incomplete. Nationstar still required Courtois to submit a letter of explanation that she did not own a business.

On April 26, 2014, Nationstar denied Courtois's loan modification application because the application was incomplete. A letter detailing the reasons Nationstar denied the application was sent to Feldman.

Although Courtois does not refute Nationstar's representations point by point, she stated that she did not receive any letter from Nationstar detailing: (1) what documents she needed to submit, (2) any timelines for submission of those documents, or (3) any indication that her application had been denied.

According to Nationstar, almost a year later, on April 14, 2015, Courtois's attorney promised to provide additional documentation to Nationstar for a loan modification review. However, no documents were provided.

Over a year later, on June 13, 2016, Nationstar sent Feldman a letter notifying him that his "client ha[d] been approved to enter a trial period plan under the Streamline Home Affordable Modification Program . . . [a]s a first step toward qualifying for more affordable mortgage payments.

Nationstar claims, on October 13, 2016, one of its representatives contacted Courtois to discuss her financial situation. Nationstar and Courtois explored options to avoid foreclosure, and Nationstar advised

Courtois of her right to request a follow up meeting within 14 days. Nationstar and Courtois allegedly repeated this interaction on April 14, 2017.

Although Courtois agrees that she talked with a Nationstar representative on October 13, 2016, she disagrees with Nationstar's representation of the content of that discussion. Specifically, she claims that there was no conversation about alternatives to foreclosure or any work out options. Moreover, after Courtois asked whether her attorney should participate on the call, the Nationstar representative stated that she could not talk to Courtois because she was represented by counsel. Additionally, Courtois claims that she did not have any calls with Nationstar from 2014 to September 25, 2023, except for the October 13, 2016 conversation.

After Nationstar recorded a notice of default on December 15, 2016, Courtois filed suit some four months later. In her original complaint, Courtois named four other defendants in addition to Nationstar. Regarding Nationstar, Courtois alleged causes of action for cancellation of instruments; violation of the California Homeowner Bill of Rights (HBOR) (Civ. Code,[2] § 2923.4 et seq.), specifically sections 2923.5, 2923.55, and 2924.17; violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.); and declaratory and injunctive relief. Nationstar demurred to the original complaint, arguing that Courtois failed to plead a valid cause of action against it. On September 1, 2017, the court sustained the demurrer as to the cancellation of instruments claim but overruled the demurrer as to the other causes of action alleged against Nationstar.

Nationstar next moved for summary judgment as to the remaining claims. After the court denied that motion, Courtois filed a first amended complaint on February 20, 2019. In that complaint, Courtois alleged six

---

[2]    Statutory references are to the Civil Code unless otherwise specified.

8

causes of action (COA) against Nationstar: violation of HBOR (specifically sections 2923.5, 2923.55, and 2924.17) (COA 3), violation of the UCL (COA 4), declaratory and injunctive relief (COA 5), invasion of privacy (COA 6), negligence (COA 7), and breach of confidence (COA 8). Nationstar answered the complaint but then filed a motion for judgment on the pleadings.

By the time Nationstar filed its motion for judgment on the pleadings, it had also recorded a notice of rescission of the previously recorded notice of default. Thus, as of December 13, 2018, the day of the notice of rescission's recording, the Property was not subject to an active nonjudicial foreclosure proceeding. Moreover, there is no indication in the record that Nationstar has recorded a second notice of default beginning the nonjudicial foreclosure process anew.

Courtois opposed the motion for judgment on the pleadings, and Nationstar filed a reply.

In a minute order dated December 4, 2020, the court granted in part and denied in part Nationstar's motion for judgment on the pleadings. The court granted the motion without leave to amend as to COAs 3, 5, and 6; granted the motion with leave to amend regarding COAs 4 and 8; and denied the motion concerning COA 7. The court then gave Courtois until January 4, 2021 to file an amended complaint. Courtois did not file an amended complaint by the prescribed deadline.

On August 12, 2021, Nationstar brought its second motion for summary judgment, aimed at Courtois's negligence claim. Among other arguments, Nationstar maintained that it did not owe Courtois any duty of care, following the line of cases recognizing "that a financial institution owes borrowers no duty of care 'when the institution's involvement in a loan transaction does not exceed the scope of its conventional role as a mere lender

9

of money.' " (See, e.g., *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 63 (*Lueras*).) Additionally, Nationstar asserted that Courtois's negligence claim was barred by the economic loss rule.[3]

In opposing the motion for summary judgment, Courtois relied on California case law wherein a court determined that loan servicers were in a special relationship with borrowers and thus fell within an exception to the economic loss rule that would otherwise prohibit Courtois's negligence claim. In her opposition, Courtois did not argue that Nationstar owed her any duty of care based on statute.

On November 23, 2021, the trial court denied Nationstar's motion for summary judgment. In doing so, the court stated the general rule that " 'a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money' " but noted that California appellate " 'courts [were] divided on the question of whether accepting documents for a loan modification is within the scope of a lender's conventional role as a mere lender of money, or whether, and under what circumstances, it can give rise to a duty of care with respect to the processing of the loan modification application.' " The court then applied factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647 at page 650 (*Biakanja*) and determined that a question of fact existed as to whether to impose a common law duty of care upon Nationstar. Also, the court found that it could not conclude that the economic loss rule precluded the negligence claim because of the possibility that the parties enjoyed a special relationship.

On February 17, 2023, over two years after the court granted Courtois leave to amend her complaint, Courtois filed a motion for leave to amend.

---

[3] We shall explain the economic loss rule *post*.

10

On April 7, 2023, the court granted the motion and directed Courtois to file and serve her amended complaint by April 17, 2023. She did not do so.

On June 23, 2023, Nationstar filed a renewed motion for summary judgment as to the remaining cause of action of negligence (COA 7).[4] Nationstar based its motion primarily on *Sheen, supra*, 12 Cal.5th 905.[5] The court set a hearing for that motion on October 6, 2023.

On July 18, 2023, Courtois filed a motion for leave to file a second amended complaint under Code of Civil Procedure section 473, subdivision (b). In that motion, Courtois's attorney claimed that he prepared the second amended complaint and instructed his paralegal to file it, but it was never filed. Nationstar opposed the motion, arguing that it would be prejudiced if Courtois was permitted to file an amended complaint so close to the October 20, 2023 trial date.

The court denied Courtois's motion to file a second amended complaint, finding that Courtois failed to demonstrate entitlement to the relief requested. Accordingly, the only claim remaining against Nationstar was negligence.

The court held a hearing on Nationstar's motion for summary judgment on October 6, 2023. After hearing oral argument as well as considering the papers and evidence, the court took the matter under submission. Five days

---

[4] At that point, the court had granted Nationstar's motion for judgment on the pleadings as to six of the seven causes of action. Because Courtois did not file an amended complaint, only the seventh cause of action for negligence remained at the time of Nationstar's motion for summary judgment.

[5] As we discuss *post*, the California Supreme Court resolved the split between the various appellate courts and determined that a lender does not owe a borrower a duty of care sounding in general negligence principles in processing, reviewing, and responding carefully and completely to a borrower's loan modification application. (*Sheen, supra*, 12 Cal.5th at p. 915.)

later, the court issued a minute order granting the motion, concluding that *Sheen*, *supra*, 12 Cal.5th 905 was controlling, and thus, Courtois could not maintain her negligence claim against Nationstar.

The trial court subsequently entered judgment in favor of Nationstar. Courtois timely filed a notice of appeal.

## DISCUSSION

Courtois challenges both the court's order on the motion for judgment on the pleadings and the judgment following the motion for summary judgment. We first turn to the motion for judgment on the pleadings.

## I.

## MOTION FOR JUDGMENT ON THE PLEADINGS

A. *Courtois's Contentions*

Courtois asserts the trial court prejudicially erred by granting the motion for judgment on the pleadings as to the causes of action for violation of HBOR (COA 3), violation of the UCL (COA 4), invasion of privacy (COA 6), and breach of confidence (COA 8).[6] In the alternative, she argues the court abused its discretion by not allowing her to amend her claims. We are not persuaded by either argument.

B. *Standard of Review*

"In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo." (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.) Typically, "[w]e review the trial court's denial of leave to amend for an abuse of discretion." (*Rea v. Blue Shield of California* (2014) 226 Cal.App.4th 1209, 1223.) However, when a court grants a plaintiff leave to amend the

---

[6]     Courtois does not address the court's order dismissing COA 5 (declaratory and injunctive relief).

12

complaint and the plaintiff opts not to amend, we treat the failure to amend as a waiver of unpled allegations. (See *Shaw v. Los Angeles Unified School District* (2023) 95 Cal.App.5th 740, 753 (*Shaw*).) In other words, "the failure to amend a complaint constitutes an admission that the plaintiffs have stated the case as strongly as they could have, and no additional facts could be alleged to cure the defect." (*Ibid*.)

C. *Analysis*

Before we consider the substance of Courtois's claims here, we first address a threshold issue. Although the trial court twice granted her leave to file an amended complaint to address her fourth (UCL) and eighth (breach of confidence) causes of action, Courtois did not do so.[7] Thus, we treat her failure to amend as a waiver of unpled allegations as to those causes of action (see *Shaw, supra,* 95 Cal.App.5th at p. 753), and we will not consider any argument here that she can plead additional facts to state a valid claim for her UCL or breach of confidence causes of action. Rather, we shall only address her assertion that the allegations in the first amended complaint were sufficient to state UCL and breach of confidence causes of action. That said, as to the causes of action to which the court did not permit any leave to amend, we will consider whether the court abused its discretion in not

---

[7]     More than two years after the trial court first gave her leave to file a second amended complaint, Courtois filed a motion for leave to file a second amended complaint under Code of Civil Procedure section 473, subdivision (b). The court denied that motion, and Courtois does not claim the court erred in doing so. Thus, to the extent the order denying her motion to amend was appealable, Courtois has waived the issue by not addressing it here. (See *Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361 (*Tisher*).)

13

allowing Courtois leave to amend.[8] "The burden of demonstrating a reasonable probability that the defect can be cured by amendment 'is squarely on the plaintiff.' " (*McKenney v. Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 78.)

For clarity, we will begin with the two causes of action for which Courtois has waived any unpled allegations: violation of the UCL and breach of confidence. We then will turn to the remaining two causes of action that were dismissed with prejudice following the motion for judgment on the pleadings.

1. UCL

The UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143 (*Korea Supply*).) A claim under the UCL involves a " 'borrow[ing of]' violations from other laws by making them independently actionable as unfair competitive practices." (*Ibid.*) A plaintiff must show he or she has suffered actual injury in order to pursue a UCL action. (Bus. & Prof. Code, § 17204.) "A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition." (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590.) "Prevailing plaintiffs are generally limited to injunctive relief and restitution. [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179 (*Cel-Tech*).)

---

[8]     Those causes of action are in violation of HBOR (COA 3) and invasion of privacy (COA 6). As we noted *ante*, Courtois does not address her claim for declarative and injunctive relief (COA 5); we thus consider any appeal regarding that cause of action waived. (See *Tisher, supra*, 231 Cal.App.3d at p. 361.)

14

Moreover, only a person who "has suffered injury in fact and has lost money or property as a result of the unfair competition" can bring such a claim. (Bus. & Prof. Code, § 17204.) " ' "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance . . . ." ' " (*Animal Legal Defense Fund v. LT Napa Partners LLC* (2015) 234 Cal.App.4th 1270, 1279.)

Below, the trial court found that Courtois had not alleged an injury in fact that stemmed from Nationstar's conduct and thus had no standing to bring a claim under the UCL. After independently reviewing the first amended complaint, we reach the same conclusion. Indeed, in explicitly alleging that she has standing to bring a claim under the UCL, Courtois avers, not wrongful conduct by Nationstar, but the untoward acts of the originators of the Loan: "[Courtois] has suffered injury in fact, including but not limited to being subjected to the false representations of Countrywide and [Goldman Sachs Mortgage Company] in the table funding of the loan. [Courtois] would not have entered into the financial agreement if Defendants had not deceived [Courtois]. [Courtois] has paid interests and charges on the loan and therefore, has standing to bring forth these UCL claims." Thus, Courtois's only allegations of standing did not involve any acts of Nationstar.

However, we note there are other allegations of possible loss. For example, Courtois alleged that she was "suffering the imminent loss of her home" and would lose the downpayment and improvements she made on the Property. Yet, as the trial court noted and Courtois does not refute, the notice of default was rescinded, and there is no indication in the record whatsoever that the loss of the Property is looming. The possible loss of the Property at a foreclosure sale at some undetermined time in the future does not satisfy the loss of money or property the UCL requires.

15

In addition, in her opening brief, Courtois maintains that she suffered economic injury with late fees, property inspection fees, attorney fees and legal costs to enforce HBOR, and, as such, she has standing to bring a UCL claim. Nonetheless, she does not point to where in the first amended complaint she made these allegations regarding her UCL claim. At most, Courtois alleged that she "incurred the burden to pay the costs of retaining a forensic mortgage loan auditor and attorney to investigate the fraudulent and otherwise illegal activities of the Defendants." Yet, none of these fees or costs constitute injuries in fact within the meaning of the UCL. (See *In re Google Inc. Street View Electronic Communications Litigation* (N.D. Cal. 2011) 794 F.Supp.2d 1067, 1086 [treating attorney fees as a loss of money or property would "effectively eviscerate the heightened standing requirements"].) This is because the fees and costs Courtois paid to a third party are not money or property that Nationstar acquired from Courtois attributable to Nationwide's unlawful acts. Thus, those fees and costs cannot be restitution to which Courtois is entitled under the UCL. (Cf. *Cel-Tech, supra*, 20 Cal.4th at p. 179; *Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 453 ["in the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest"]; *Korea Supply, supra*, 29 Cal.4th at pp. 1144–1145 ["We defined an order for 'restitution' as one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken' "].)[9] Consequently, the trial court did

---

[9] Relying on *Brandt v. Superior Court* (1985) 37 Cal.3d 813, Courtois argues that attorney fees can be damages caused by a tort. That case is not helpful here. It does not deal with a claim under the UCL. Moreover, damages are not available under the UCL. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173.)

16

not err in granting the motion for judgment on the pleadings as to the UCL claim.

2.  Breach of Confidence

"An actionable breach of confidence will arise when an idea, whether or not protectable, is offered to another in confidence, and is voluntarily received by the offeree in confidence with the understanding that it is not to be disclosed to others, and is not to be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission." (*Faris v. Enberg* (1979) 97 Cal.App.3d 309, 323.)  Further, the core of a breach of confidence claim is the defendant's agreement to safeguard the privacy of the plaintiff's information.  (See *Tele-Count Eng'rs, Inc. v. Pacific Tel. & Tel. Co.* (1985) 168 Cal.App.3d 455, 463.)

Here, Courtois explains that she bases her breach of confidence cause of action on the allegations that she disclosed "confidential information, including her income, debts, tax returns, and loan amount to Nationstar for Nationstar to evaluate the information to determine foreclosure prevention options for [Courtois]."  Moreover, she avers that Nationstar breached Courtois's confidence by accepting information from Courtois "then communicating its review results to another party, thereby depriving [Courtois] of her right (and Nationstar's agreement) to that review and information, and the modification as sought."[10]

These allegations are not sufficient to allege a breach of confidence cause of action.  As the trial court noted, Courtois has not alleged any resulting damage based on Nationstar's alleged breach of confidence.  Here,

---

[10]    In the first amended complaint, the gravamen of the breach of confidence claim was "that Nationstar had a duty of confidence and breached that duty when it disclosed [Courtois's] mortgage information to a total stranger."

17

Courtois has not shown where she has alleged any resulting damage for this claim. Indeed, in the respondent's brief, Nationstar points at this shortcoming, and Courtois offered no response in her reply brief.

Further, Courtois's arguments underscore that she did not experience any damages. She claims that Nationstar's disclosure of the results of its loan modification review to a third party somehow deprived Courtois of her right to the "review and information" as well as "the modification . . . sought." This contention borders on nonsensical. Try as we might, we simply cannot contemplate how Nationstar's disclosure to a third party that it was denying Courtois a loan modification interfered with Nationstar's review of Courtois information and deprived her of a modification. And Courtois does not offer any further explanation beyond her bald assertion that she was deprived of some right. Moreover, she has not and cannot claim that she had the right to a loan modification. Accordingly, the trial court did not err in granting the motion for judgment on the pleadings as to the cause of action for breach of confidence.

3. HBOR

Courtois's third cause of action concerns alleged statutory violations under HBOR. That robust statutory scheme "was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.' (§ 2923.4, subd. (a).)" (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272; see *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1114–1115.) " 'HBOR provides for injunctive relief for statutory violations that occur prior to foreclosure [citation], and monetary damages when the borrower seeks

18

relief for violations after the foreclosure sale has occurred.' " (*Schmidt,* at p. 1115; see § 2924.12, subds. (a) & (b).)[11] Importantly, it also contains a safe harbor provision to encourage the curing of violations. (*Schmidt*, at p. 1115; *Billesbach v. Specialized Loan Servicing LLC* (2021) 63 Cal.App.5th 830, 845.) Under section 2924.12, subdivision (c), "a mortgage servicer . . . shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale."[12]

In the first amended complaint, Courtois alleged that Nationstar ran afoul of HBOR by violating sections 2923.5, subdivision (a)(1), 2923.55, subdivision (b), and 2924.17. All these sections pertain to what a servicer must do before recording a notice of default. For example, Courtois averred that Nationstar violated section 2923.5, subdivision (a)(1) because it had not communicated with her before recording the notice of default. She also alleged that Nationstar did not comply with section 2924.17 because the statements it made in the declaration attached to the notice of default were not competent, reliable, or truthful. (See § 2924.17, subds. (a) and (b).) And

---

11 Before a trustee's deed upon sale has been recorded, section 2924.12, subdivision (a) allows a court to award injunctive relief "to enjoin a material violation of Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17." Following the recording of a trustee's deed upon sale, section 2924.12, subdivision (b) provides for "actual economic damages" resulting from "material violation" of the same sections listed in subdivision (a). Further, if the material violation was intentional or reckless, or resulted from willful misconduct, the court may award the borrower the greater of treble actual damages or statutory damages in the amount of $50,000.

12 Section 2924.19, subdivision (c) provides the same safe harbor language.

19

Courtois claimed Nationstar violated section 2923.55, subdivision(b)(1)(B) by failing to provide her with a statement that she could request a copy of the note evidencing her indebtedness.

The court granted Nationstar's motion for judgment on the pleadings as to the third cause of action, finding that it was undisputed that Nationstar had rescinded the notice of default and thus had availed itself of the safe harbor protections codified in sections 2924.12, subdivision (c) and 2924.19, subdivision (c).

On appeal, Courtois does not argue that the trial court erred in granting the motion for judgment on the pleadings as to the third cause of action. Nor does she offer additional allegations she can make to state a valid claim for violations of sections 2923.5, subdivision (a)(1), 2923.55, subdivision (b), or 2924.17. In this sense, she concedes that she cannot state a claim for violations of these statutes she alleged were violated in the first amended complaint.

Nonetheless, on appeal, she offers additional allegations that implicate new statutes. For example, she avers that Nationstar violated section 2923.5, subdivision (d). That section provides:

> "A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the

20

meeting by the mortgage servicer is subject to approval by the borrower."[13]

Additionally, Courtois asserts that she can state a valid claim for the violation of section 2923.6 because Nationstar did not properly communicate with her and her attorney regarding the denial for her loan application as well as her right to appeal the denial of same. To this end, she avers: "Nationstar failed to comply with [section] 2923.6 as it did not communicate with [Courtois] or her attorney. This is a material violation of HBOR."[14]

Finally, Courtois maintains that she can state a valid claim for violation of section 2923.7. To wit, she offers the following allegations:

> "Under Civil Code § 2923.7[, subdivision] (c) the servicer is statutorily required to assign a single point of contact who is to remain the assigned to the loan until the application is finalized or the loan's default resolved. This did not happen. Instead, between August 15, 2013, and June 13,

___

[13] Section 2923.5, subdivision (d) allows a borrower to select a designee as his or her point of contact with the servicer. It does not require any affirmative act by a servicer. Further, it is not one of the statutes that gives rise to any remedy under HBOR. (See § 2924.12, subds. (a) and (b).) Accordingly, a servicer cannot violate this subdivision, and a court could not award any relief based on the subdivision in any event. In other words, a claim that a defendant violated section 2923.5, subdivision (d) cannot be the basis for a valid cause of action.

[14] Courtois's skeletal assertion that Nationstar did not communicate with her or her attorney is undermined by her own declaration that she submitted in support of her opposition to Nationstar's third motion of summary judgment. In that declaration, Courtois (1) admitted that she had conversations with Nationstar in July and August 2013 about a loan modification application that she earlier sent to the previous servicer; (2) stated that she talked with Nationstar on September 5, 2013 about loan modification application related issues; (3) represented that her attorney informed her that a loan application had been submitted to Nationstar; and (4) acknowledged a conversation with a Nationwide representative on October 13, 2016.

2016, Nationstar assigned seven different [single points of contact], of which *none* communicated with Ms. Courtois. This is a material violation of HBOR and until the servicer conducts its due diligence, it is prohibited from recording the [notice of default]."[15]

Here, we are struck by the difference between the alleged violations of HBOR contained in the first amended complaint and those that Courtois claims she should be allowed to plead in a second amended complaint. They do not involve the same statutes. They are not based on the same alleged wrongs. Alternatively stated, the new allegations do not appear to be related to the claims of HBOR violations in the first amended complaint whatsoever. In this sense, we understand why the trial court granted Nationstar's motion as to the third cause of action without leave to amend. As pleaded in the first amended complaint, the subject allegations were all contingent on the recording of the notice of default. Because Nationstar had rescinded the

[15]     It is not evident that these additional allegations state a valid claim for a violation of section 2923.7. Courtois apparently assumes that the statute requires a single person to serve as the borrower's only point of contact throughout the time the servicer is servicing the loan. We read no such requirement under the statute. Rather, the statute defines a " 'single point of contact' " as "an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive." (§ 2923.7, subd. (e).) Moreover, the statute does not require that the single point of contact remain the same person for the life of the loan. Here, the record shows that Nationstar identified in writing the contact information for the elected point of contact, whose identity changed over time. Courtois does not claim that she was not able to contact any of the designated points of contact. Nor does she say that, once contacted, the designated point of contact could not perform the responsibilities set forth in subdivisions (b) through (d). Yet, some of the confusion regarding the point of contract was probably attributable to Nationstar, at times, providing the relevant information to Feldman instead of Courtois.

notice of default, Courtois could not state a valid claim for the violations she alleged.  (See § 2924.12, subd. (c).)

In addition, we cannot discern from the record before us whether Courtois represented to the trial court that she could state a claim for a HBOR violation based upon completely different statutes and additional allegations unrelated to the statutory wrongs alleged in the first amended complaint.  Further, we are troubled by the fact that Courtois did not make these allegations of violations of the Civil Code in the first amended complaint.  After all, her "new" allegations here seem to be primarily based on Nationstar's interactions with a third party and its disclosure of Courtois's private information to that third party.  And Courtois based at least four causes of action, three sounding in tort, on those allegations in the first amended complaint (invasion of privacy, breach of confidence, and negligence).  Moreover, in the only statutory claim mentioning Nationstar's contact with a third party and disclosure of Courtois's private information to same (the UCL claim), Courtois pleaded:  "[Courtois] alleges that Nationstar engaged in discussions about [Courtois's] loan with a total stranger, in violation of California Financial Codes and in violation of [Courtois's] right to privacy."  Courtois did not mention or otherwise rely on any alleged statutory violations of 2924.5, subdivision (d), 2923.6, or 2923.7 in her first amended complaint.

We acknowledge that "an appellate court 'may consider new theories on appeal from the sustaining of a demurrer.' [Citation.]"  (See *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1245.)  That proposition is a corollary of the rule that, in "testing the legal sufficiency of the pleaded facts, . . . appellate courts are to consider 'any possible legal theory' that might support the viability of the cause of action" in reviewing an

23

order sustaining a demurrer. (See *Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 566.) This approach of "liberally construing pleadings is . . . rooted in the policy allowing a plaintiff to maintain a lawsuit if the plaintiff has, on any theory, properly pleaded facts indicating a valid cause of action." (See *ibid.*)

This rule of liberal construction does not apply with equal force to entirely new causes of action first sought to be added on appeal. (Cf. *Warden v. Kahn* (1979) 99 Cal.App.3d 805, 810 ["Although . . . great liberality will ordinarily be allowed in the amendment of a complaint after the sustaining of a demurrer, it is settled law that a party may not file an amended complaint which states such an entirely new and different cause of action"]; see *People v. $20,000 U.S. Currency* (1991) 235 Cal.App.3d 682, 691 [the rules applicable to a demurrer apply to a motion for judgment on the pleading].) Alternatively stated, a plaintiff may not allege the "violation of an entirely different primary right . . . based upon an entirely different set of facts." (*Warden*, at pp. 809–810.) Further, it is well-settled that a party cannot assert a new theory of liability for the first time on appeal. (See *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 (*Richmond*) [" 'A party is not permitted to change his [or her] position and adopt a new and different theory on appeal' "]; see *Beroiz v. Wahl* (2000) 84 Cal.App.4th 485, 498, fn. 9 (*Beroiz*) [noting "appellants may not raise a factually novel legal theory of liability on appeal"].)

Here, Courtois is offering new legal theories of liability for the first time on appeal and not simply providing additional allegations that would address the shortcomings the trial court pointed out in granting the motion for judgment on the pleadings. Stated differently, Courtois is seeking to add an entirely new cause of action based on new theories of liability. This is

24

improper.  (See *Richmond, supra*, 196 Cal.App.3d at p. 874; *Beroiz, supra*, 84 Cal.App.4th at p. 498, fn. 9.)  Consequently, Courtois's arguments based on alleged statutory violations of 2924.5, subdivision (d), 2923.6, or 2923.7 fail to demonstrate reversible error.[16]

   4.  Invasion of Privacy

Courtois next argues the trial court erred in granting the motion for judgment on the pleadings regarding COA 6 (invasion of privacy) without leave to amend.  Initially, we note that Courtois does not provide any additional facts she can allege to satisfy the elements of this cause of action.  Thus, we shall only consider the allegations as pleaded in the first amended complaint.

More importantly, Courtois neither provides the elements of an invasion of privacy claim nor explains how she has sufficiently pleaded each element.  Rather, she claims the trial court granted Nationstar's motion because it determined that an invasion of privacy required disclosure to more than one person.  She then provides a general discussion of the constitutional right to privacy under California law without a detailed discussion of the factual allegations she claims satisfy each element of the subject claim.  This is fatal to her challenge on appeal.

A judgment or order of the lower court is presumed correct, and an appellant has the burden of demonstrating reversible error.  (*Benach v.*

---

16    Generally, a "plaintiff may not amend the complaint to add a new cause of action without leave having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend." (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023.) Below, Courtois did not move for leave to amend her complaint to state a new cause of action.  Further, she does not address why we should permit her to do so on appeal.  Thus, to the extent that Courtois is claiming the right to amend her complaint to add a new cause of action, she has waived that issue on appeal.

*County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Here, Courtois focused on one issue of the court's conclusion as to the invasion of privacy claim without discussing the other deficiencies the court found existed regarding this cause of action.

Below, the trial court evaluated the invasion of privacy claim as two possible privacy related torts. The first was based on the common law of intrusion consisting of two elements: (1) the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy and (2) the intrusion must occur in a manner highly offensive to a reasonable person. (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 286.) After providing the elements to this cause of action, the court explained that Courtois did not allege an intrusion by Nationstar. On appeal, Courtois does not address the court's reasoning on this point whatsoever. Thus, she fails to explain how the court erred in its granting of the motion as to this claim.

Additionally, the court analyzed the invasion of privacy cause of action as a public disclosure of private facts claim. Accordingly, it listed the elements as follows: (1) public disclosure; (2) of a private fact; (3) which would be offensive and objectionable to a reasonable person; and (4) which is not of legitimate public concern. (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 214.) Then the court noted that Courtois did not allege

26

disclosure of private information to the public. Courtois at least tangentially addresses this conclusion by pointing out that California privacy law protects more than simply a disclosure of private information to the public at large. Although that statement may be true, it does little to explain how Courtois has alleged a valid cause of action for invasion of privacy. At most, she appears to be arguing that she was not trying to allege a public disclosure of private facts cause of action. That said, Courtois does not explain the elements of the cause of action she attempted to plead and how she did or can plead all the subject elements.

However, relying on *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 at pages 39 through 40, Courtois lists the elements of a claim for invasion of privacy in violation of the state constitutional right to privacy: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy. Despite listing the elements, she engages in no further analysis. It is unclear whether she is claiming that she has pleaded a cause of action under *Hill* or if she is just using *Hill* as an example of an invasion of privacy cause of action that does not require the disclosure be made to the public. In any event, Courtois does not illuminate how the allegations in the first amended complaint satisfy the elements set forth in *Hill*. And it is not the role of this court to make Courtois's arguments for her. We will not perform an independent, unassisted review of the record " 'in search of error or grounds to support the judgment.' " (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.)

Further adding confusion to Courtois's argument regarding the invasion of privacy claim, Courtois discusses the Financial Information Privacy Act (FIPA) (Fin. Code, § 4050 et seq.) That act limits disclosure of

27

nonpublic personal information by financial institutions. (Fin. Code, § 4052.5.) To the extent that Courtois is relying on FIPA to support her claim that certain financial information she provided to Nationstar might be confidential, we agree. But beyond that uncontroversial contention, Courtois does not explain how FIPA otherwise supports her argument that she has alleged a valid cause of action for the tort of invasion of privacy based on the allegations in the first amended complaint. Moreover, she has not alleged a cause of action for violation of FIPA.

In summary, Courtois has failed in her burden on appeal in showing that she has alleged a cause of action for invasion of privacy. She does not clearly set out the elements of that cause of action and explain how she alleged all the required elements of the invasion of privacy claim. Consequently, she cannot show the trial court committed reversible error in dismissing the invasion of privacy claim.

## II.

## MOTION FOR SUMMARY JUDGMENT

A. *Courtois's Contentions*

Courtois maintains the trial court erred in granting Nationstar's motion for summary judgment. We disagree.

B. *Standard of Review*

We review an order granting a motion for summary judgment de novo. (*Ryan v. Real Estate of the Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642.) Typically, we engage in the same three-step process as the trial court in evaluating a motion for summary judgment. (*Ibid*.) However, in this matter, the primary issue raised by Nationstar's motion for summary judgment was whether *Sheen, supra,* 12 Cal.5th 905 barred Courtois's negligence claim as a matter of law. We therefore shall dispense with the usual approach and

28

analyze the effect of *Sheen* in the instant matter, considering the specific allegations of negligence in the first amended complaint.

C. *Analysis*

"The elements of a negligence cause of action are (1) the existence of a duty, (2) a breach of that duty, (3) injury to the plaintiff caused by the defendant's breach, and (4) actual damages." (*Romero v. Los Angeles Rams* (2023) 91 Cal.App.5th 562, 567.) Courtois's negligence claim here is predicated on Nationstar's handling of her financial information regarding a potential loan modification, specifically that Nationstar "disclose[d] personal information about her mortgage to a complete stranger" while possessing a "duty to protect her private information."

Below, the trial court determined that summary judgment was appropriate to Courtois's sole remaining claim of negligence because, under *Sheen, supra*, 12 Cal.5th 905, Courtois could not demonstrate that Nationstar owed her a duty of care.

In *Sheen*, the plaintiff alleged a postforeclosure claim against his lender for negligence, asserting that the lender had a legal duty of care to respond fully to his loan modification applications, and that by breaching that duty, the plaintiff " 'for[went] alternatives to foreclosure' " and was damaged. (*Sheen, supra*, 12 Cal.5th at p. 915.) The trial court sustained the lender's demurrer, and the Court of Appeal affirmed. (*Ibid.*) Our high court, after noting that the California appellate courts were divided on the issue of a lender's duty to its borrower in the loan modification context (*id.* at pp. 919–920), and after exhaustive discussion, held "that when a borrower requests a loan modification, a lender owes no tort duty sounding in general negligence principles to 'process, review and respond carefully and completely to' the borrower's application." (*Id.* at p. 948.) Additionally, the court made

29

clear that *Biakanja* and that case's multifactor test did not apply in a situation where the plaintiff is not a " 'third person not in privity' " with the defendant, such as a borrower and lender relationship. (*Id.* at p. 937, citing *Biakanja, supra*, 49 Cal.2d at p. 650.)

More specifically, the court concluded that a lender does not owe its borrower a tort duty sounding in general negligence principles to modify or consider modifying the borrower's loan where the borrower suffers purely "economic losses—i.e., pecuniary losses unaccompanied by property damage or personal injury[.]" (*Sheen, supra*, 12 Cal.5th at p. 915.) Such a negligence claim arises from the mortgage contract between a borrower and its lender and therefore "falls within the ambit of the economic loss doctrine." (*Ibid.*)

As explained in *Sheen*, the economic loss rule provides that there is no recovery in tort for negligently inflicted financial harm unaccompanied by physical or property damage. (*Sheen, supra*, 12 Cal.5th at p. 922.) This rule also bars claims that arise from, or are not independent of, an underlying contract between the parties. (*Id.* at p. 923.) A further refinement of the contractual economic loss rule in the lender-borrower context, articulated by the court in *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096 and adopted in *Sheen*, provides that a " 'financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.' " (*Sheen*, at p. 927 [citing *Nymark*, at p. 1096]; see *Lueras, supra*, 221 Cal.App.4th at p. 67 ["[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money"].)

Here, Courtois argues *Sheen* is not analogous to the instant action. To this end, she notes that in *Sheen*, the California Supreme Court was

concerned with a second lien and did not consider whether the lender owed the plaintiff a statutory duty of care under HBOR. (*Sheen, supra*, 12 Cal.5th at pp. 920–922.) She thus asserts that because the Loan here is a first lien, *Sheen* is not instructive. We are not persuaded.

Courtois argues that Nationstar owed her a statutory duty of care under HBOR. In other words, she claims she based her negligence claim on duties that arise out of HBOR. However, the allegations of the first amended complaint belie that argument. In the cause of action for negligence, Courtois simply alleges that Nationstar owed her a duty of care to protect her private information. That said, it is clear from the other allegations of the first amended complaint, Courtois implies this duty arose within the context of Nationstar considering her loan modification application. Nonetheless, she does not list any statute giving rise to the alleged duty in the operative complaint.

The lack of Courtois's reliance on any statute to impose a duty of care on Nationstar is further buttressed by Courtois's opposition to Nationstar's second motion for summary judgment. There, Courtois simply argued that some California courts had concluded that a servicer and borrower have a special relationship that gives rise to a duty of care in the processing and consideration of a borrower's loan modification. Put differently, Courtois grounded her negligence claim under a common law duty of care she claimed Nationstar owed her, not a duty of care imposed by statute. Thus, she did not claim that Nationstar owed her a duty to protect her private information based upon HBOR or any other statute.

Further, Courtois did not argue that Nationstar owed her a statutory duty of care despite including a claim for a violation of HBOR in the first amended complaint. True, at the time of the third motion for summary

31

judgment, the trial court had dismissed the HBOR claim pursuant to Nationstar's motion for judgment on the pleadings, but none of the HBOR statutes included in the first amended complaint imposed a duty on Nationstar to protect Courtois' private information. Rather, the statutes on which Courtois relied for her HBOR claim all involved whether Nationstar had properly and lawfully recorded a notice of default. Thus, there are no allegations in the operative complaint regarding HBOR that give rise to the duty of care that Courtois alleged Nationstar breached and before our high court decided *Sheen*, Courtois never claimed that Nationstar owed her a statutory duty of care.

Additionally, Courtois's opening brief here underscores the lack of any hint in the first amended complaint that Courtois was claiming that Nationstar owed her a statutory duty of care as the basis for her negligence claim. In that brief, Courtois maintains that "HBOR establishes a servicer's duty to a specific class of borrowers, those in default of their [first] lien mortgages on their primary residences." In support of this assertion, Courtois cites to Civil Code section 2923.4[17] as well as two California cases.[18] Section 2923.4 provides:

---

[17] Courtois actually cited to Civil Code section 2923.4(a), which does not exist. We assume that the addition of subdivision (a) was a typo.

[18] Neither case cited by Courtois is helpful for her position. The first predates the effective date of HBOR by over 40 years. (See *Connor v. Great Western Sav. Loan Assn.* (1968) 69 Cal.2d 850.) The second case (*Weimer v. Nationstar Mortgage, LLC* (2020) 47 Cal.App.5th 341) was rendered " 'depublished' " or not " 'citable' " by the California Supreme Court nearly two years before Courtois filed her opening brief. (See *Weimer v. Nationstar Mortgage*, S262024.) Accordingly, Courtois should not have cited *Weimer v. Nationstar Mortgage, LLC* in its opening brief. (See Cal. Rules of Court, rule 8.1115(e)(3).)

"The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.  Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process."

However, nothing in section 2923.4 imposes a duty on Nationstar to protect Courtois's private information.

Courtois also claims that the following statutes required Nationstar to assume special duties "above any contractual duty" it owed her: sections 2924.10, 2923.5, subdivision (d), 2923.6, subdivisions (c)(2), (d), and (f), 2923.7, subdivisions (a) and (c).  However, none of these statutes appear anywhere in the first amended complaint.  Moreover, these statutes do not create a duty for Nationstar to protect Courtois's private information while considering an application for a loan modification.  Of the statutes listed, section 2923.5, subdivision (d) perhaps comes the closest, but it falls well short of establishing the duty Courtois now claims exists.  As we discussed *ante*, that subdivision allows a borrower to designate a HUD-certified housing counseling agency, attorney, or other advisor to whom a servicer can talk to discuss the borrower's financial situation and options for the borrower to avoid foreclosure.  (See § 2923.5, subd. (d).)  Thus, subdivision (d) of section 2923.5 offers an option for borrowers to use a third party in communicating with servicers.  It does not create any affirmative duty for servicers to protect a borrower's private information.  Moreover, within the context of section 2923.5, it is clear that the purpose of these communications between a servicer and a borrower's designee is to ensure that the servicer complies with certain requirements before filing a notice of

33

default. (See § 2923.5, subd. (a)(1)(A) and (B).) Here, Courtois is not alleging any breach of a duty relating to the filing of a notice of default.

It appears that Courtois, in opposing Nationstar's third motion for summary judgment, cited multiple provisions of HBOR in an attempt to cobble together a "special relationship in [that] Nationstar had a duty to act with care in performing its *statutory duties* to 'process, review, and respond carefully and completely to [Courtois's] loan modification applications.' " But this is not the duty Courtois claimed Nationstar owed her or breached. Nonetheless, she emphasizes the following allegations from the first amended complaint:

> "[Courtois] alleges as a result of Nationstar's negligence, she has been deprived of entering into any meaningful communications to restructure her mortgage loan to allow her to retain ownership by clearing the loan. That as a result of Nationstar's negligence, this process has been delayed causing unwanted late fees and charges that could have been resolved had Nationstar engaged in actual communications with [Courtois] about modifying the loan."

These allegations, however, are contingent on the duty and breach Courtois alleged—Nationstar's duty to protect Courtois's private information while it considered her application for a loan modification. They are not allegations of an additional duty. Further, the allegations speak to the results of the alleged breach; they do not aver any additional duties that Courtois claims Nationstar owed her under HBOR.

In summary, the duty alleged in the first amended complaint is the duty to protect Courtois's private information. Courtois did not allege that duty arose from a statute. In opposing Nationstar's second motion for summary judgment, Courtois argued Nationstar owed her a duty of care under common law, general negligence principles. She did not point to HBOR or any other statute as imposing a duty of care upon Nationstar. She

34

took this approach despite alleging violations of HBOR in the first amended complaint. Only after our high court decided *Sheen* did she change legal theories and assert that her negligence claim was based on a statutory duty of care. Further, none of the provisions of HBOR on which Courtois relies to create a statutory duty of care require Nationstar to protect her private information, which is the duty she alleged Nationstar owed and breached.

Against this background, it appears that Courtois was opposing the motion for summary judgment based on issues and claims not raised in the first amended complaint. This is not proper. "The pleadings delimit the issues to be considered on a motion for summary judgment. [Citation.]" (*Turner v. State of California* (1991) 232 Cal.App.3d 883, 891 (*Turner*).) Thus, a "defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers." (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98–99, fn. 4 (*Government Employees Ins. Co.*).) "To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion. [Citations.]" (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264–1265.) "[T]he pleadings 'delimit the scope of the issues' to be determined and '[t]he complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action.' [Citation.] [Plaintiff's] separate statement of material facts is not a substitute for an amendment of the complaint. [Citation.]" (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1201–1202, fn. 5.)

Below, Courtois did not seek leave to amend the first amended complaint to allege a basis for the duty she claims Nationstar breached. Thus, she is limited by the allegations in the operative complaint in opposing the motion for summary judgment. (See *Turner, supra*, 232 Cal.App.3d at p. 891; *Government Employees Ins. Co., supra*, 79 Cal.App.4th at pp. 98–99, fn. 4.) It might be that a borrower could point to portions of HBOR or other statutes that impose a certain statutory duty of care a servicer owes to a borrower. Based on the record and briefing before us, this is not that case.

Courtois next tries to distinguish *Sheen* on the grounds that Nationstar provided " 'extraordinary advice.' " She bases this argument on our high court's discussion of the Montana Supreme Court case, *House v. U.S. Bank National Assoc.* (Mont. 2021) 481 P.3d 820 (*House*) wherein the Montana high court noted, after observing that " 'a lender generally has no duty to modify, renegotiate, waive, or forego enforcement of the terms of a mortgage loan in order to assist a borrower to avoid a default or foreclosure,' " that " 'if the lender gives extraordinary advice . . . beyond that customary in arms-length lending and loan servicing transactions' such 'extraordinary circumstances . . . may . . . independently give rise to a special common law fiduciary duty of care.' " (*Sheen, supra*, 12 Cal.5th at 927, citing *House, supra*, 481 P.3d at pp. 828−829.) Courtois argues here that Nationstar's communications with an unauthorized third party was not ordinary or customary "and certainly rises to the level of extraordinary advice." In this sense, Courtois is claiming that Nationstar's acts and communications toward a third party somehow created a special duty of care to her. She offers no explanation why this would be so. Further, her argument appears to be based on a misunderstanding of *Sheen* and *House*.

36

The California Supreme Court discussed *House* along with several other cases from other jurisdictions to support its application of the economic loss rule to the plaintiff's negligence claim. (See *Sheen, supra*, 12 Cal.5th at pp. 925–927.) In doing so, the court was focused on the acts of the servicer or lender toward the borrower in considering whether the servicer or lender was acting separate from the contractual obligations it owed the borrower. In *House*, the Montana Supreme Court acknowledged the possibility that a lender could create a duty if it gave extraordinary advice, beyond what was customary in lending and loan servicing transactions, to the borrower. (*House, supra*, 481 P.3d at pp. 828–829.) None of the cases discussed by our high court contemplated that the servicer could engage in some act with a third party and create a common law duty of care to a borrower. Moreover, Courtois offers no explanation whatsoever how Nationstar's acts and communications toward a third party could create a duty of care to her under California common law.

Thus, Courtois has not persuaded us that Nationstar owed her a duty of care to protect her private information while it considered her for a loan modification. Further, she has not established that Nationstar engaged in any act or communication that should be considered "extraordinary" to create some sort of special relationship beyond that of a typical servicer and borrower relationship. Accordingly, we agree with the trial court that Nationstar owed no duty of care under the common law to protect the privacy

of Courtois's private information.  Courtois's negligence claim therefore necessarily fails.[19]

## DISPOSITION

The judgment is affirmed.  Nationstar is entitled to its costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

IRION, J.

RUBIN, J.

---

[19] Additionally, as explained by our high court in *Sheen*, the economic loss rule bars Courtois's negligence claim.  (See *Sheen, supra*, 12 Cal.5th at pp. 924–925.)  Courtois's argument that the economic loss rule does not apply to her negligence claim is unavailing.  She relies on the existence of a statutory duty of care.  As we explained *ante*, Courtois did not establish any such statutory duty of care owed by Nationstar.